(8 App. Div. 439)

### WITTENBERG v. SEITZ et al.

(Supreme Court, Appellate Division, Fourth Department.     July 30, 1896.)

NEGLIGENCE—EVIDENCE—QUESTION FOR JURY.

> Plaintiff, while in the employ of a building contractor, was injured by the breaking of a beam which was furnished and put in place by defendant, who had subcontracted to do the carpenter work on the building. At the point where the beam broke there were 11 knots, and a hole bored through it for an iron rod to pass, with a mortise on the lower side for the washer and nut on the rod. The beam was supported only by a prop composed of three pieces of scantling, two by five inches, nailed together. Several witnesses testified that in their opinion the knots had nothing to do with the breaking of the beam. *Held* that, though the precise cause of the accident did not appear, the question of defendant's negligence was properly submitted to the jury.

Appeal from trial term, Monroe county.

Action by Henry Wittenberg against Frederick C. Seitz and others for personal injuries. From an order denying a motion for a new trial, made on the minutes, after a trial which resulted in a verdict in favor of plaintiff for $4,000, defendant Seitz appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Edward Harris, for appellant.
John Desmond, for respondent.

ADAMS, J. The plaintiff brings this action against the defendant to recover damages for personal injuries sustained by him in consequence of an accident which occurred upon the 15th day of September, 1894. The undisputed evidence in the case shows that the defendants A. Friederichs & Sons, who are builders and contractors, residing at the city of Rochester, in this state, entered into a contract with the state to erect a three-story brick building, to be used as an annex to the Rochester State Hospital. The mason and brick work was all done by the principal contractors, but the carpenter work was performed under a separate contract entered into between the defendant Seitz and the principal contractors, by which the former was to work directly from plans and specifications furnished; the principal contractors having no control over him, either in the selection of the materials used, or in the performance of the work. At the time of the accident the building was nearly completed. The outside walls had been laid to the level of the bottoms of the joists and the tie beams of the trusses; the tie beams running north and south, and the joists east and west. The east end of those of the east span (resting upon, but in no

manner fastened to, the east wall) were in place, and the attic floor had been laid. The masons were about to begin bricking in between the joists, and to construct the cornice of the wall; and two of them were at work, bricking in between the joists on the north side of the north wall of the annex building, which was the division wall between that building and the kitchen building. There were a few piles of bricks upon the floor, mostly along the south wall; and there was nothing resting upon the tie beam, except the joists and floor. The plaintiff, who was in the employ of Friederichs & Sons, was, upon the day in question, sent up to the attic with a quantity of brick to be used by the masons in the work which they were prosecuting. While upon the floor of the attic, the same suddenly, and without warning of any kind, gave way and fell, and the plaintiff fell with it and was injured.

There was no contractual relation existing between these parties, and therefore the liability of the defendant for the injuries received by the plaintiff, if any exists, results from his failure to observe the obligations which the law imposes upon a party engaged in the prosecution of any work,—of performing the same in such a manner as not to endanger the lives or persons of other parties. This is a very well settled principle, and it is applicable to all cases where a person is engaged in the performance of work which, without the exercise of a reasonable degree of care and prevision, may be attended with risk and danger to others; and a case in point is that of Mullen v. St. John, 57 N. Y. 567, in which it was held that the owner of a building adjoining a street or highway is under a legal obligation to take reasonable care that the building shall not fall into the street or highway and injure persons lawfully there. The facts of the case in hand show that, while the plaintiff was not in the employ of the defendant, he was in the employ of the principal contractors, and, while in the performance of his duty as their employé, had occasion to go into the attic of this building, and upon the floor which had been constructed under the immediate supervision and direction of the defendant. He was therefore lawfully there, and he had a right to assume that while there he would not be exposed unnecessarily, by the defendant, to any danger to his life or person. For the defendant's omission of his duty in this regard the plaintiff seeks to charge upon him the consequences which followed.

The difficulty in this case, which has provoked much discussion and contention, arises from the fact that it is claimed that after the accident it was impossible to obtain any adequate and satisfactory explanation of its proximate cause. It is true that it was found upon examination that the beam running from the north to the south wall of this building was broken about 14 feet from the north wall, and that at the point where it broke there were 11 knots of considerable size, and also a hole about $1\frac{1}{4}$ inches in diameter, which had been bored through it, and that on the underside there was a mortise about 6 inches in diameter and $1\frac{1}{2}$ inches deep, for the purpose of giving place to a washer and nut for a bolt which was to pass through it when completed, and that the grain

of this beam was not continuous at the point of breakage, owing to the large number of knots. It is likewise true that the prop under this broken beam or stick, which was composed of three 2x5 inch scantling, and which was the only support that the beam had, was also broken. But it is insisted upon the part of the defendant that these facts, while they may possibly account for the falling of the floor, do not necessarily establish any negligence upon the part of the defendant, and that, in attributing the accident to his want of care or skill, the jury were permitted to indulge in speculation and conjecture. In support of this contention, considerable evidence was furnished,—in effect, that both the prop and the beam were sufficient for the purpose for which they were designed; that they were made of timber carefully selected, and of a quality ordinarily used for that purpose; and that it was impossible to have obtained a beam of the size of the one in question which would have been entirely free and clear of knots. And some of the witnesses gave expression to the opinion that the presence of these knots had nothing whatever to do with the breaking of the beam. In disposing of this contention on the part of the defendant, it may be assumed that the precise cause of the accident has not been made to clearly appear; and yet we think it was within the province of the jury, and that the trial court was right in submitting the question as one of fact to them, to determine from all the evidence in the case whether or not it could be fairly said that this defendant was legally liable for the injuries received by the plaintiff. It is undoubtedly a general principle of law, applicable to cases of negligence, that, before a plaintiff is permitted to recover, he shall be required to fasten the responsibility for his injuries upon the defendant with some degree of certainty; in other words, that he shall point out, and be able to place his finger upon, the particular omission of duty which occasioned the accident. But there are exceptions to this rule, and they arise under conditions so unusual that the law permits a presumption to be drawn therefrom that they are, of necessity, the result of negligence. Thus, it has been said by an eminent authority upon the subject of negligence that:

"Experience teaches that buildings, if properly constructed, do not fall without adequate cause. If no external violence appears, the fair presumption is that the fall of the building occurs through some serious defect in the condition of the building, which could scarcely have escaped the observation of the owner. The mind is thus led to a presumption of negligence on his part." Shear. & R. Neg. § 60.

And in the case of Mullen v. St. John, supra, it was held that the happening of such an accident (that is, the fall of a building), in the absence of explanatory circumstances, creates a presumption of negligence, and casts upon the owner the burden of showing the use of ordinary care. We have recently had occasion to apply this rule in a case where the cause of the accident was not clearly established. Dumes v. Sizer, 3 App. Div. 11, 37 N. Y. Supp. 929. And the authorities supporting it are quite numerous, many of which are cited in the opinion in that case. We think, therefore, that with

a presumption arising in the case, from the conceded facts therein, that the giving way of the floor in question was attributable to negligence upon the part of the person responsible for its construction, the defendant was called upon to show that he had exercised that reasonable degree of care in constructing the floor which was, required of him, and which, had it been exercised, would have relieved him from all liability for the accident which befell the plaintiff. The defendant did furnish evidence which was designed by him to repel any presumption of negligence which might exist in the case. That evidence has already been adverted to, and when taken in connection with the fact that the floor fell, and that this beam and support were found to be broken, and the former at the very point where the knots and hole and mortise existed, it seems very clear that an issue was presented to the jury, which permitted them to fasten the responsibility for this accident upon the defendant without extending their inquiries into the realm of speculation and conjecture; and, looking at the case calmly and dispassionately, we are not prepared to say that the evidence did not fully satisfy the conclusion reached by them.

We have examined the various exceptions taken by the defendant's counsel to the charge of the court, and the refusal of the court to charge in accordance with certain requests, and we are unable to discover that any error was committed which requires a retrial of the case. We therefore conclude that the case was properly submitted to the jury, that their verdict was sustained by the evidence, and that, consequently, the order appealed from should be affirmed.

Order affirmed, with costs. All concur.