## RICHARDS v. PARKS.

Eastern Section.   April 13, 1935.

Petition for Certiorari denied by Supreme Court, March 12, 1936.

616

Donald T. Stout, Curtin & Haynes, and Joseph A. Caldwell, all of Bristol, for plaintiff in error.

W. H. Rouse and Burrow & Burrow, all of Bristol, for defendant in error.

McAMIS, J.   Charles E. Parks, Jr., a minor twelve years of age, suing by next friend, instituted this suit to recover damages for personal injuries sustained by him in July, 1933, while riding in an automobile being operated by plaintiff in error, C. D. Richards, Jr.   The accident occurred near Warrenton in the state of Virginia and all parties agree that the right of recovery is. controlled by the laws of that state.

There was a jury verdict for $5,000, approved by the trial judge, and defendant below, C. D. Richards, Jr., has appealed in error to this court.

For the sake of convenience, the parties will be hereinafter referred to as plaintiff and defendant, according to their status in the court of trial.

In May, 1933, plaintiff's mother, Mrs. Charles E. Parks, Sr., planned a trip for herself and family in her automobile from Bristol, Tennessee, to the World's Fair in Chicago.   The family consisted of Mrs. Parks, her husband, Charles E. Parks, Sr., a daughter, and plaintiff, Charles E. Parks, Jr.   We infer from the evidence that, although he was a competent driver, Mr. Parks declined to make the trip except upon condition that he be relieved of the necessity of doing any of the driving.

To overcome this difficulty, Mrs. Parks conceived the plan of taking defendant, Charles D. Richards, Jr., on the trip to assist her with the driving. Mrs. Parks was to give defendant free transportation and furnish him with lodging on the trip in consideration for his assistance in driving the car. Defendant does not deny that the offer tendered by Mrs. Parks was as stated by her. He did testify, however, that he delivered $50 to Mr. Parks to defray his incidental expenses. Mr. Parks testified that he took charge of this money and kept a record of expenditures from it which record was lost, but further stated, however, that he paid defendant's room rent out of Mrs. Parks' money and that defendant paid nothing for his transportation.

Mrs. Parks testified that she "employed" defendant to make the trip and drive the car, but she later qualified that expression by the statement that he was paid only in the sense that he received free transportation and lodging.

Returning from the Fair, the party reached Washington, D. C., before noon on the date of the accident. After spending several hours there, defendant driving, they proceeded to Mt. Vernon and, after about half an hour spent there, defendant drove several miles and stopped at a filling station.

Upon leaving the filling station, defendant resumed his position as driver and proceeded westwardly toward the point of accident, which was 25 miles west of the filling station. Plaintiff was seated beside him and Mr. Parks was seated next to plaintiff on the right end of the front seat. Mrs. Parks and her daughter were in the rear seat.

Leading from the filling station to the point where the accident occurred, the highway had a paved or asphalted surface 18 feet or more in width. According to the testimony of Mr. and Mrs. Parks, defendant was an excellent driver, and after leaving the filling station they saw no indication that he was driving recklessly or out of the ordinary in any respect until, on a straight stretch of road, they noticed that the car gradually began to leave the paved surface and get out on the shoulder as they approached a culvert under the road. They assumed that defendant was driving onto the shoulder and out of the line of traffic preparatory to turning the operation of the car over to Mrs. Parks, but instead of stopping he continued to get further off the road, and, when they saw the car heading in the direction of a concrete abutment at the right end of the culvert, both Mr. and Mrs. Parks attempted to shout a warning of the danger of colliding with the abutment. Mrs. Parks testified that defendant did not attempt to check the car or avoid the collision, but accelerated the speed of the car and drove directly into the abutment, causing the injury to plaintiff here complained of.

Defendant testified that he remembered stopping at the filling

station; that soon thereafter plaintiff fell asleep and, when some one laughed at his comical appearance, he glanced around at plaintiff and joined in the laughter. Although he testified that after glancing at plaintiff he remembered again looking at the road and that the car was then in its proper position on the highway, he has no further recollection of anything that occurred thereafter until he found himself in the hospital after the accident.

He further testified that he had not eaten or drunk anything to cause him to be sleepy or unconscious; that he had not lost sleep; that he did not feel "the least bit sleepy" and had no warning that he was about to fall asleep or lapse into unconsciousness.

There is no direct testimony attempting to explain this unusual and unfortunate accident.

The first three assignments involve the question of whether there was any evidence properly to be submitted to the jury and whether there is any evidence to sustain the verdict and judgment. Inasmuch as these assignments involve the question of whether plaintiff was a guest in the car at the time of the injury, we will first consider and dispose of that question.

Counsel for defendant urgently insist that plaintiff's status was that of a guest, and invoke the gross negligence rule obtaining in the state of Virginia, which requires a showing of gross negligence before a guest can recover for injuries sustained while riding in an automobile.

While the question of determining the status of an occupant of a car is ordinarily one of fact to be determined by the jury, if reasonable minds can reach but one conclusion from uncontroverted facts and circumstances, the question then becomes one of law for the court.

In this case there be no other reasonable conclusion except that plaintiff was the guest of his mother. She sponsored, promoted, and financed the trip for the comfort, pleasure, and education of plaintiff and other members of her family, and plaintiff was invited to enjoy all the benefits of the accommodations provided for him. The fact that plaintiff was her son would not make him any less the guest of his mother while on the trip. While we do not think a child could be considered a guest of its parents in their home which the parent is, both by the laws of nature and of the state, required to provide and maintain for the child's protection, the case is different where the parent goes beyond the ordinary and usual obligations and duties incident to the relationship of parent and child and invites the child, as a voluntary act, to partake of some unusual and exceptional pleasure, as in this case.

We have found no case dealing with the subject, but the case of Pepper v. Morrill (C. C. A.), 24 F. (2d), 320, 57 A. L. R., 750, is authority for the view that a wife, invited to accompany her husband

on an automobile trip, may be the guest of her husband. If, in spite of the legal fiction that husband and wife are one person, the wife can be the guest of her husband while riding in his automobile, by analogy of reasoning, the child could and would become the guest of his parent under the same circumstances.

We are also of opinion there is no reasonable inference to be drawn from the evidence except that defendant, Richards, acted as agent for Mrs. Parks in driving the car and that he was acting in that capacity at time of the injury to plaintiff. He received transportation and lodging, in consideration for his services, and was taken on the trip only because his services were needed in helping drive the car and if he had performed this service without compensation or advantage of any kind to himself he would, nevertheless, have been the agent of Mrs. Parks, since she directed him to drive the car and he did so under her direction and control. Nor was the undertaking a joint enterprise. Mrs. Parks owned the car, paid the expense of its operation, and, so far as the record discloses, relinquished no part of the right of control to defendant.

If, as we have held, plaintiff became the guest of Mrs. Parks and defendant acted as her agent in driving the car during the trip, what was the status of plaintiff in relation to defendant? Manifestly he was not a guest of defendant. Defendant having no right of control, either exclusive or jointly with Mrs. Parks, over the management and operation of the car, entitling him to select the route over which it would travel, etc., he had no right to say who should ride in the car; and hence could not have invited plaintiff to ride. The relation of host and guest presupposes (1) that the host has a right to extend hospitality to the guest at the particular place where he is invited to be present, and (2) that an invitation, express or implied, has been given.

We are of opinion, however, that plaintiff's rights are to be measured by the same standards as if he had been riding at the direct invitation of defendant. Being the guest of Mrs. Parks, defendant's principal, and since he paid nothing for his transportation, plaintiff's right of recovery against the agent of his host must be measured by the same standards as if the suit were brought directly against his host. He received the benefits of the transportation gratuitously from Mrs. Parks, his mother. If Mrs. Parks, instead of defendant, had been driving at the time of the injury (dismissing for the moment the question of the right of the child to sue its parent), it could not be gainsaid that plaintiff would have been required to make out his case against his host by a showing of gross negligence. The fact that, instead of driving the car herself, she provided an agent to drive it would not alter plaintiff's status for, in legal contemplation, the act of the agent is that of the principal.

In the Virginia case of Gale et al. v. Wilbur, 163 Va., 211,

175 S. E., 739, decided by the Virginia Supreme Court of Appeals. September 20, 1934, and reported in advance sheet of Southeastern Reporter (quoting from the syllabus), it was said:

"In determining whether person riding in automobile is 'passenger' to whom driver owes high degree of care, or 'guest' to whom driver is liable only for gross negligence, term 'passenger' in its legal sense imports a contract for some pecuniary benefit *from party riding in automobile,* as distinguished from 'guest' who rides gratuitously." (Italics ours.)

■ Here it is perfectly clear that there was no pecuniary benefit passing "from party riding in automobile." His transportation was furnished him gratuitously by Mrs. Parks and the fact that defendant received a "pecuniary benefit" for driving (transportation and lodging) from plaintiff's host would not make plaintiff a "passenger" of defendant.

We are of opinion, therefore, that the gross negligence rule is applicable.

■ We may note, in passing, that the authorities, in states where the gross negligence rule has been applied, unanimously agree that the fact that the guest happens to be a minor does not take the case out of the rule or relax the necessity of establishing gross negligence. West v. Poore, 196 Mass., 183, 81 N. E., 960, 11 L. R. A. (N. S.), 936, 124 Am. St. Rep., 541; Eisenhut v. Eisenhut, 212 Wis., 467, 248 N. W., 440, 250 N. W., 441, 91 A. L. R., 549; Vol. 1, Blashfield on Automobiles, p. 958.

■ It is insisted, however, by counsel for defendant that, since a child cannot sue its parent, plaintiff cannot maintain this suit against the parent's agent, here the defendant, Richards.

We cannot agree with this insistence, though ably and plausibly made.

Suit by the child against its parent is not denied because of negation of fault, but because a sound public policy, designed to subserve the repose of families and, hence the best interest of society, forbid to the minor child the right to appear in court in the assertion of a claim for damages for personal injuries suffered at the hands of the parent.

However, no such reasons obtain for denying the minor the right to sue the agent of the parent for a wrong committed by the agent. No principle of public policy is involved in such case and it would be a travesty upon reason and justice to apply the rule that the child cannot sue the parent in such case. When the reason for the rule ceases, the rule itself no longer exists.

The same reasons which forbid the child the right to sue its parent apply to a suit by the wife against her husband. Yet, in Pepper v. Morrill, supra, under very similar facts, the wife was permitted to sue her husband's agent for injuries sustained while

riding in her husband's automobile, being operated by defendant Morrill, as his agent.

Similarly, in Schubert v. August Schubert Wagon Co. (1928), 223 App. Div., 502, 228 N. Y. S., 604, it was held that the fact that the negligent employee was the husband of the person injured did not prevent a recovery against the employer, notwithstanding that the wife could not recover directly against her husband, the negligent employee.

Unless the evidence relied upon to establish gross negligence is uncontroverted and such evidence and all reasonable and legitimate inferences to be drawn therefrom are susceptible of but one interpretation and meaning by reasonable minds, the question is one of fact and is one for the jury. Thomas v. Snow, decided by Supreme Court of Appeals of Virginia June 14, 1934, 162 Va., 654, 174 S. E., 837.

The proof shows that defendant ran the car off the paved surface of the highway; that it was not wet or slippery; that there was no other traffic to interfere with his operation of the car and no apparent excuse for the occurrence of the accident, and yet the fact remains that he drove the car into the abutment which was unobstructed to his view and apparent to; and seen by, the other occupants of the car. If defendant was conscious and sane, it would have been gross negligence for him to have disregarded the warnings shouted to him by both Mr. and Mrs. Parks and refuse to give heed to their warnings of a danger which should have been already known to him. Defendant is presumed to have been conscious and to have been aware of his own conduct and the reasonable and probable consequences flowing therefrom until he is able to overturn the presumption by proof sufficient to induce the belief in the minds of the jury that he was unconscious and had no warning of impending unconsciousness by falling asleep or otherwise.

We have reviewed the testimony only for the purpose of showing that a fact question was presented, but since the cause must be remanded for a new trial for reasons hereinafter stated and since defendant lost the benefit of his motion for a directed verdict by introducing evidence after it was made (Nashville Ry. & Light Co. v. Henderson, 118 Tenn., 284, 99 S. W., 700), we deem it inexpedient to find whether there was material evidence to support the verdict.

The fourth assignment of error complains of the court's action in submitting to the jury the question of whether plaintiff was a guest in the car at the time of the injury. In our opinion, as we have already indicated, there were no controverted facts bearing upon this question and the court should have instructed the jury that he was a guest at the time of the accident and injury complained of. To have so instructed the jury would have served to greatly clarify the rather complex nature of the case and the issues presented.

Assignment of error No. 4 is, accordingly, sustained.

We have already disposed of, in principle, assignment of error No. 5, directed to the action of the court in refusing to charge defendant's request No. 2 as follows:

"Under the evidence in this case plaintiff was a guest of Mrs. Parks, owner of the car. If the evidence shows that she, as the owner, had entrusted the driving of the car to defendant at the time of the accident, and she was present in the car, then the defendant's duty to plaintiff was the same as if Mrs. Parks, the owner, had herself been driving at the time—that is defendant's conduct must have amounted to what is termed gross negligence."

The foregoing is in our opinion a correct exposition of the law and the special request should have been given in charge.

Assignment No. 5 must therefore be sustained.

Assignment No. 6 is without merit and is overruled.

The seventh assignment of error is based upon the refusal of the court to charge defendant's special request No. 1. While the request tendered is in the main a correct general statement of the law of Virginia on the subject here at hand as we interpret it, it is not fitted to the precise facts of this case for the reason, among others, that it assumes that plaintiff was the guest of the driver when, as we have pointed out, he was the guest of the driver's principal, Mrs. Parks. Special requests are properly denied unless strictly accurate and assignment No. 7 is overruled.

By the eighth assignment of error, we are asked to reverse and remand the case for a new trial because of the failure of the court to include in the charge to the jury any statement or reference to the theory of defendant that he suddenly, and without any warning symptoms, lapsed into unconsciousness, resulting in the injury to plaintiff or to charge defendant's special requests outlining his theory and contention that respect.

Inasmuch as the case must be reversed and remanded for a new trial, we deem it inexpedient to specifically approve or disapprove of the special requests, since to do so might embarrass the court in framing a charge to fit the facts as they are developed upon the rehearing of the case. However, we are of opinion that defendant was entitled to have his theory and contention included in the charge and that the court's failure to do so was prejudicial to his case, especially in view of the fact that plaintiff's theory of liability as set out in the declaration was included in the charge.

"Each party has a right to submit instructions correctly expressing to the jury his theory of the case and the refusal of such instruction is reversible error." Tenn. Elec. Power Co. v. Van Dodson, 14 Tenn. App., 54.

It is held by very respectable authority that the mere fact that the driver of an automobile falls asleep or lapses into unconsciousness is not necessarily a predicate of liability.

624

One who, stricken by paralysis, overcome by poisonous gas, or seized by a fit, still continues to drive, and, unconscious, so directs the car as to cause injury to another occupant of the car, cannot be held liable for the way in which he controls it, nor can one who has fallen asleep, under such circumstances, be held liable unless he was reasonably aware that he was about to fall asleep to the extent that one of ordinary prudence would not attempt to continue driving; and, of course, where falling asleep it relied upon as gross negligence, as must be the case here, it would be necessary that the driver was aware of the danger of falling asleep and, in utter forgetfulness and disregard of, and indifference to the legal rights and safety of the injured party, continued to drive the car, proximately resulting in the injury complained of.

However, there are few agencies customarily used in everyday activity so fraught with danger to life and property as an automobile proceeding upon a much traveled highway at high speed without the direction of the conscious mind, and, because this is so, reasonable care to avoid such danger requires very great care, upon the part of the driver. In determining the question whether the requisite care has been used, it must be considered, as a fact known to every one, from common experience, that ordinarily sleep does not come on unheralded. In any ordinary case, one cannot go to sleep while driving an automobile without having relaxed that degree of vigilance which the law requires, and it usually lies within his own power to keep awake or to cease driving, and so the mere fact of his going to sleep while driving is a proper basis for an inference of negligence sufficient to make out a prima facie case against him for injuries sustained by another and sufficient for a recovery if no circumstances tending to excuse or justify his conduct are shown. Vol. 1, Blash. on Automobiles, p. 270, sec. 16; Bushnell v. Bushnell, 103 Conn., 583, 131 A., 432, 44 A. L. R., 785, 791.

We think the failure of the court to charge the law dealing with the liability of a driver for falling asleep and his refusal to charge special requests designed to give the jury a guide upon which to base their verdict was erroneous and prejudicial and to that extent the eighth assignment is sustained.

The last two assignments of error are overruled. The last makes the complaint that defendant, being a minor, a guardian ad litem should have been appointed to defend the suit. Since the case must be reversed and remanded for other reasons, and since a guardian ad litem was appointed after the hearing of evidence before the jury, and is still acting as such, it is unnecessary to decide the question of practice raised.

The cause will be reversed and remanded for a new trial in conformity to our holdings herein. The costs of appeal will be taxed to plaintiff. Costs below will abide final determination of the case.